Matter of 20 Mall at Guilderland, LLC v Board of Assessment Review of the Town of Guilderland (2022 NY Slip Op 07283)

Matter of 20 Mall at Guilderland, LLC v Board of Assessment Review of the Town of Guilderland

2022 NY Slip Op 07283

Decided on December 22, 2022

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:December 22, 2022

534469
[*1]In the Matter of 20 Mall at Guilderland, LLC, Appellant,
v
Board of Assessment Review of the Town of Guilderland et al., Respondents.

Calendar Date:November 21, 2022

Before:Egan Jr., J.P., Aarons, Reynolds Fitzgerald, Fisher and McShan, JJ.

Goldman Attorneys PLLC, Albany (Paul J. Goldman of counsel), for appellant.
Tabner, Ryan & Keniry, LLP, Albany (William F. Ryan Jr. of counsel), for respondents.

Aarons, J.
Appeal from an amended judgment of the Supreme Court (Margaret T. Walsh, J.), entered December 9, 2021 in Albany County, which, among other things, partially dismissed petitioner's application, in a proceeding pursuant to RPTL article 7, to reduce the 2019 tax assessment on certain real property owned by petitioner.
Petitioner is the owner of the subject property — a multi-tenant shopping center in Albany County. Petitioner commenced this proceeding challenging the tax assessment for the subject property, which was assessed at $15,999,400 for the 2019 tax year. According to petitioner, the property was overvalued and should have been assessed at $12,450,000. Following a nonjury trial, Supreme Court partially dismissed the petition and found that the proper assessment for the subject property was $14,725,641. Petitioner appeals.
At issue is whether petitioner satisfied its burden of proving by a preponderance of the evidence that the subject property has been overvalued (see Matter of Colonie Ctr. v Town of Colonie, 209 AD3d 1214, 1215 [3d Dept 2022]; Matter of Cohoes Falls L.P. v Board of Assessment Review, 195 AD3d 1126, 1127 [3d Dept 2021]). When determining whether petitioner met that burden, Supreme Court "enjoys broad discretion in that it can reject expert testimony and arrive at a determination of value that is either within the range of expert testimony or supported by other evidence and adequately explained by the court" (Matter of Brookdale Senior Living Solutions & Meriweg Latham LLC v Town of Colonie Bd. of Assessment Review, 186 AD3d 1801, 1804 [3d Dept 2020] [internal quotation marks and citation omitted], lv denied 37 NY3d 902 [2021]; see Matter of Adirondack Mtn. Reserve v Board of Assessors of the Town of N. Hudson, 106 AD3d 1232, 1237 [3d Dept 2013]). The valuation of a property presents a question of fact and, accordingly, the court's decision will be upheld "unless it is, among other things, based upon an erroneous theory of law or it appears that the court has failed to give conflicting evidence the relative weight which it should have and thus has arrived at a value which is excessive or inadequate" (Matter of George A. Donaldson & Sons, Inc. v Assessor of the Town of Santa Clara, 135 AD3d 1138, 1142 [3d Dept 2016] [internal quotation marks, brackets, ellipsis and citations omitted], lv denied 27 NY3d 906 [2016]; see Matter of Empire Realty Invs. I LLC v Board of Assessment Review of the Town of E. Greenbush, 209 AD3d 1239, 1240 [3d Dept 2022]).
Supreme Court largely accepted the opinions and values as reached by petitioner's appraiser. The court, however, did adjust some of the appraiser's valuations with which petitioner takes issue. For instance, the appraiser calculated the average market rent for small in-line spaces at $14.00 per square foot (hereinafter PSF), which, according to the appraiser, was slightly above the overall average for spaces leased between 2016 and 2019. Meanwhile, the court adjusted this calculation [*2]to $14.83 PSF. In making this adjustment, the court noted the leasing information relied upon by the appraiser with respect to similar properties and distinguished them based upon certain anchor tenants and desirability of their location. The court also used the appraiser's data and included one commercial tenant that the appraiser had excluded, reasoning that such tenant's lease started in August 2017. The court further noted that one of the vacant spaces was leased shortly after the applicable valuation date, thereby demonstrating the ability of petitioner to find tenants. In view of the foregoing, the court's determination of $14.83 PSF will not be disturbed (see Matter of Goodhue Wilton Props., Inc. v Assessor of the Town of Wilton, 121 AD3d 1360, 1362 [3d Dept 2014]; Matter of Adirondack Mtn. Reserve v Board of Assessors of the Town of N. Hudson, 106 AD3d at 1240; Matter of Myron Hunt/Shaker Loudon Assoc. v Board of Assessment Review for Town of Colonie, 6 AD3d 953, 955 [3d Dept 2004]).
Regarding vacancy and collection loss, the appraiser determined a 16% vacancy rate for the subject property. This rate factored, among other things, the subject property's physical vacancy rate of 14.2% and a vacancy rate of 11.1% for similar properties in the area. Although Supreme Court credited the appraiser's conclusion of an 11.1% vacancy rate for similar properties in the area, it did not do so with respect to the 14.2% physical vacancy rate for the subject property. Rather, the court found that the subject property had a physical vacancy rate of 13.1% and ultimately reached a 12.1% vacancy rate by averaging the 13.1% rate and the 11.1% rate. In finding that the subject property had a physical vacancy rate of 13.1%, it appears that the court factored that CeCe Wool leased a space at the subject property, thereby decreasing the vacancy rate. The court erred in doing so, given that the record discloses that CeCe Wool leased the space after the applicable taxable status date of March 1, 2019. As such, the square footage ultimately leased by CeCe Wool should not have been included when determining the subject property's physical vacancy rate. Instead, the record supports the appraiser's physical vacancy rate of 14.2% for the subject property. That said, averaging the appraiser's 14.2% physical vacancy rate for the subject property and the 11.1% vacancy rate for similar properties, the vacancy rate should be 12.7%. With this vacancy rate and using $2,292,643.00 as the annual potential gross income of the subject property, the effective gross income is $2,001,477.34.
Regarding various operating expenses, Supreme Court found that the appraiser's opinions were not adequately explained or sufficiently supported by competent evidence. Having reviewed the record, no basis exists to upset the court's determination in this regard (see Matter of Center Albany Assoc. LP v Board of Assessment Review of the City of Troy, 151 AD3d 1420, 1424 [3d Dept 2017]). To the extent [*3]that petitioner disagrees with the weight to be accorded to the evidence, this is a matter resting within the court's discretion (see Matter of Brookdale Senior Living Solutions & Meriweg Latham LLC v Town of Colonie Bd. of Assessment Review, 186 AD3d at 1804). With these values unchanged, the net operating income, after factoring the effective gross income as modified herein, should be $1,628,153.34.
As to the income capitalization rate, after using various methods and ratios, the appraiser concluded such rate to be 9%. The appraiser, however, acknowledged in his testimony that he rounded up slightly to get to the 9% capitalization rate. Furthermore, in finding the appraiser's 9% capitalization rate to be "slightly high," Supreme Court noted the characteristics and the commercial development of the neighborhood, as well as the subject property's revenues. Given that the court's discretionary finding of an 8.75% capitalization rate was based upon the credible proof and adequately explained, it will not be disturbed. Although petitioner contends that the court was improperly swayed by certain opinions adduced by respondent's expert, the court found such expert's analysis to be "less persuasive."
Finally, with the net operating income as $1,628,153.34 and an overall capitalization rate of 11.15%,[FN1] the fair market value of the subject property is $14,602,272 (rounded). Noting the equalization rate of 100%, the subject property should be assessed at $14,602,272. Petitioner's remaining contentions have been examined and are unavailing.
Egan Jr., J.P., Reynolds Fitzgerald, Fisher and McShan, JJ., concur.
ORDERED that the amended judgment is modified, on the law, without costs, by reducing the tax assessment on the subject property for 2019 to $14,602,272, and, as so modified, affirmed.

Footnotes

Footnote 1: The tax load factor of 2.4% was added to the capitalization rate of 8.75% to reach the overall capitalization rate.